**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **MICHELLE DUNN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-00477-Y-BP** |
| | § | |
| **GENERAL MOTORS LLC, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion to Dismiss for Failure to Effectuate Proper Service and Motion to Dismiss for Failure to State a Claim (ECF No. 30) that Defendant General Motors LLC ("GM") filed on August 6, 2026; Plaintiff Michelle Dunn's Responses Opposing Defendant's Motion (ECF Nos. 32, 33), filed on August 10 and 12, 2026, respectively; and GM's Reply in Support of its Motion (ECF No. 35), filed on August 18, 2026.

After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Senior United States District Judge Terry R. Means **GRANT** GM's Motion (ECF No. 30), enforcing the Settlement Agreement (ECF No. 30-2) executed by Dunn and GM on January 30, 2025 and **DISMISS** Dunn's claims without leave to amend.

## I. BACKGROUND

In this employment discrimination case, Dunn sues her former employer, GM, for discrimination and retaliation under Title VII of the Civil Rights Act of 1964. ECF No. 26 at 3-5. Dunn worked at GM's Arlington Assembly plant from 1985 until GM discharged her on January 24, 2025 for allegedly violating its harassment policy. *Id.* at 2; ECF No. 30 at 2. Dunn denies the

conduct underlying the accusation. ECF No 26 at 3. Following her discharge, the United Auto Workers Local Union filed a complaint against GM on her behalf. ECF No. 26 at 2.

On January 30, 2025, Dunn, GM, and the Union resolved Dunn's grievance through a Settlement Agreement (the "Agreement") that each party signed. *Id.* at 2-3; ECF No. 30-2 at 2-4. Under the Agreement, GM agreed to reinstate Dunn "for the sole purpose of allowing [her] to retire on or after the 1st of the month." ECF No. 30-2 at 2. The Agreement states, among other things, that Dunn "will never be returned to active employment status" and that she "is releasing and disclaiming any right to recovery or payment for any claims, charges, lawsuits, appeals, and grievance(s) relating to her employment and benefits." *Id.* It further declares that it "is intended as a complete and final settlement and release of all claims and grievances the grievant has or may have, known or unknown, against" GM and expressly includes claims for "whistleblowing," "retaliation," and "wrongful discharge." *Id.*

The Agreement gave Dunn twenty-one days to consider it and advised her "to review this release with an attorney of her choosing." *Id.* at 3. It includes language confirming that Dunn "has reviewed and understands this Settlement . . . that her decision relative to this offer was made after full consideration . . . and free from any other promise, condition, or coercion by anyone." *Id.* Dunn signed and dated the Agreement on January 30, 2025. *Id.*

On April 13, 2026, after receiving her Right to Sue Letter from the Equal Employment Opportunity Commission (ECF No. 26 at 4), Dunn filed her Complaint against GM. ECF No. 3. GM moved to dismiss (ECF No. 20), and the Court ordered Dunn to file an Amended Complaint (ECF No. 23). Dunn filed her Amended Complaint on July 16, 2026 (ECF No 26), and the Court deemed GM's Motion to Dismiss (ECF No 20) to be moot. In her Amended Complaint, Dunn does

not dispute that she signed the Agreement. *See* ECF No. 26 at 2. Instead, she contends that she signed it under duress. ECF No.26 at 2.

GM moves to dismiss the Amended Complaint because Dunn released her claims under the Agreement and because she was not under duress when she signed the Agreement. ECF No. 30 at 5-8. In her Response, Dunn alleges that she was under duress because management "detained and isolated" her in the "fishbowl" room "for an entire day until 2:18 PM[;]" that "[i]mmediately prior to leaving," Clarence Williams "blindsided" her "with entirely false and fabricated accusations of harassment[;]" that her "committee man, zone man, and chairman—acting in concert with management—ambushed [her], telling her she had to 'retire ASAP[;]'" and that "[t]he very next morning, January 24th, while still in a state of severe shock, confusion, and distress," she "was forced to sign the document." ECF No. 33 at 2.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) standard

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Each claim must contain "a short and plain statement . . . showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Accordingly, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Bell Atl. Corp.*, 550 U.S. at 547).

Particular to a *pro se* party, courts liberally construe the pleadings, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Texas at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

**B. Requirements to enforce a settlement agreement**

A court exercising federal question jurisdiction applies federal law to the enforcement of settlement agreements. *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). "Whether there is an agreement is governed by the federal common law of contracts, which uses the core principles of the common law of contract[s] that are in force in most states." *Smith v. United States*, 328 F.3d 760, 767 n.8 (5th Cir. 2003) (internal quotation marks and citations omitted). For a valid contract to exist under federal law, there must be an offer, acceptance, consideration, essential terms, and a meeting of the minds among the parties. *See In re Deepwater Horizon*, 786 F.3d 344, 355-59 (5th Cir. 2015). An offer and acceptance "is judged by the parties' overt acts and words, not by the subjective or secret intent of the [parties]." *Id.* at 355. "Consideration is defined as either a benefit to the promisor or a loss or detriment to the promisee." *W. Sur. Co. v. Medsolutions, Inc.*, No. 3:01-cv-2248-P, 2003 WL 251433, at *4 (N.D. Tex. Feb. 3, 2003) (internal quotation marks and citations omitted). The parties have a meeting of the minds

if they entered into the agreement "knowingly and voluntarily." *Bowers v. Abundant Home Health, L.L.C.*, 803 F. App'x 765, 767 (5th Cir. 2020).

To determine whether a settlement agreement was knowingly and voluntarily executed, the Fifth Circuit has adopted a "totality of the circumstances" approach. *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002) (citing *O'Hare v. Global Natural Res.*, 898 F.2d 1015, 1017 (5th Cir. 1990)). Once the employer has established that the employee "signed a [settlement agreement] that addresses the claims at issue, received adequate consideration, and breached the release . . . [i]t is then incumbent upon the former employee to demonstrate that the release was invalid because of fraud, duress, material mistake, or some other defense." *Ollie v. Plano Indep. Sch. Dist.*, 323 F. App'x 295, 297 (5th Cir. 2009) (internal quotations omitted) (quoting *Smith*, 298 F.3d at 441). The following factors are relevant in determining whether an employee has established a defense to the validity of the release:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id.* (quoting *O'Hare*, 898 F.2d at 1017).

## III. ANALYSIS

### A. The facts show that the Agreement is valid.

GM extended a valid offer to Dunn by agreeing to reinstate her "for the sole purpose of allowing [her] to retire," in exchange for her release of all claims and grievances she had or may have had, known or unknown, against GM. ECF No. 30-2 at 2. Dunn accepted GM's offer when she signed and dated the Agreement on January 30, 2025, and she does not dispute that she did so.

ECF No. 26 at 2. The Agreement sets out its essential terms in writing, and Dunn acknowledged that she "reviewed and underst[ood]" them. ECF No. 30-2 at 3.

Dunn and GM also exchanged sufficient consideration to make the Agreement valid. GM discharged Dunn for allegedly violating its harassment policy. ECF No. 26 at 2; ECF No. 30 at 2. Even so, it agreed to reinstate her "for the sole purpose of re-classifying her separation[,]" which converted her discharge into a retirement and allowed her to retire with benefits to which she "would otherwise not be entitled." ECF No. 30-2 at 2. In exchange, Dunn released her claims against GM and relinquished her seniority rights. *Id.* Regardless of whether Dunn engaged in the conduct underlying her discharge, GM's agreement to forgo its disciplinary position and permit her retirement was a benefit to Dunn sufficient to support the Agreement. Because Dunn signed a release that addresses the claims at issue and received consideration for it, the burden shifts to her to show that the release was invalid. *See Ollie*, 323 F. App'x at 297.

**B. Dunn does not allege facts to show she signed the Agreement under duress**.

To establish duress as an affirmative defense to a contract, Dunn must show that there is (1) "a threat to do some act which the party threatening has no legal right to do," (2) "some illegal exaction or some fraud or deception," and (3) "the restraint must be imminent and such as to destroy free agency without presenting means of protection." *Lee v. Hunt*, 631 F.2d 1171, 1178 (5th Cir. 1980). Further, "[o]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity." *Mid-S. Towing Co.*, 733 F.2d at 392. Thus, Dunn bears the burden of showing that the Agreement "was invalid because of fraud, duress, material mistake, or some other defense." *Smith*, 298 F.3d at 441.

Moreover, an employer has a right to settle employment related claims brought by one of its former employees, and negotiations are an integral part of that settlement process. "These

negotiations will often involve emotional strain and negotiation pressures, but by itself this is not enough to overcome the will of a party to a contract." *Lee*, 631 F.2d at 1178 (internal quotations omitted). Mere feelings of pressure or strain experienced in settlement negotiations are not enough to prove duress. *See id.*

Although Dunn asserts that GM's harassment accusation was false and that her discharge after a forty-year career was unwarranted, she has not alleged facts showing that she signed the Agreement under duress. ECF No. 26 at 3. Accepting Dunn's account as true, she has not shown that GM threatened to do anything it had no legal right to do or that her free will was destroyed without protection and that this caused her to sign the Agreement. Dunn's allegation that she was "detained and isolated" in the "fishbowl" room until 2:18 PM seems to only describe the meeting, albeit an uncomfortable one, in which her discharge was discussed. ECF No. 33 at 2. She does not allege that anyone physically prevented her from leaving or threatened her with force to prevent her from doing so.

Dunn alleges that she was deprived of free will because "[t]he very next morning, January 24th, while still in a state of severe shock, confusion, and distress from the fabricated allegations against her 40-year career, Plaintiff was forced to sign the document." ECF No. 33 at 2. But the Agreement states that Dunn signed it on January 30, 2025, six days after her separation. ECF No. 30-2 at 2-3. Furthermore, the Agreement provided that she had her twenty-one days to consider its terms. *Id.* A lengthy meeting does not overcome the fact that Dunn was free to leave, and that her free will was not destroyed. *Lee*, 631 F.2d at 1178; *see also F.D.I.C. v. White*, 76 F. Supp. 2d 736, 739 (N.D. Tex. 1999) (rejecting duress claims where "no overt or subtle threats were ever made by the [opposing party] or the mediator").

Dunn's remaining allegations do not show an improper threat. Dunn's allegation that she was told she would be discharged and denied retirement and medical benefits if she did not sign does not show duress because GM already had discharged her and the retirement benefits were the consideration GM offered for her release. ECF No. 30-2 at 2. And the instruction to "retire ASAP" came from Dunn's Union representative, not GM. *Id.* Her assertion that the Union representative acted "in concert with management" is a conclusion unsupported by any factual allegation and is irrelevant to her claim against GM. Moreover, the Agreement provided that Dunn "directed her Union to settle her grievances with GM on the terms outlined herein." ECF No. 30-2 at 3.

Finally, Dunn's allegations that she was in "severe shock, confusion, and distress" describe the "emotion strain and negotiation pressures" that often accompany the settlement of employment disputes. *See Lee*, 631 F.2d at 1178. Dunn negotiated from a difficult position as an employee GM had already discharged, but the pressure of that position, without more, does not amount to unlawful coercion. Accordingly, Dunn has not plausibly alleged that she signed the Agreement under duress.

### C. The facts show that Dunn knowingly and voluntarily released her claims.

The pleaded facts reflect that Dunn knowingly and voluntarily released her claims against GM. *See Smith*, 298 F.3d at 441. Dunn worked for GM for nearly forty years and used the Union grievance process to challenge her discharge. ECF No. 26 at 2. She had twenty-one days to consider the Agreement, participated in the negotiation through her Union representatives, and directed the Union to settle her grievance on the Agreement's terms. ECF No. 30-2 at 3. The Agreement is short, plainly releases all claims relating to her employment, including claims for retaliation, whistleblowing, and wrongful discharge, and advised her in writing to review the release with an attorney. *Id.* at 2-3. Further, the Agreement provided as consideration a limited

reinstatement allowing her to retire after her discharge. *Id.* at 2. Each factor weighs in favor of finding that Dunn knowingly and voluntarily released her claims in the Agreement.

Finally, Dunn released "all claims and grievances [she] has or may have, known or unknown, against" GM, including claims for retaliation, whistleblowing, and wrongful discharge. ECF No 30-2 at 2-3. Each of Dunn's claims in the pending case arise from conduct that occurred before she signed the Agreement, including her December 2024 report of a painting defect, the alleged retaliation that followed, her discharge on January 24, 2025, and the denial of the $50,000 early retirement payment. ECF NO. 26 at 2-5. Because the Agreement is valid and releases these claims, Dunn has not stated a claim upon which relief can be granted, and the Court need not address whether her allegations would state a claim under Title VII but for her release of the claim.

**D. Leave to amend would be futile**.

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus, when possible, the Fifth Circuit has recommended that dismissal of suits for failure to state a claim be without prejudice. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice).

As a result, a district court must generally afford a *pro se* plaintiff an opportunity to amend before dismissing for failure to state a claim. *Gregory v. McKennon*, 430 F. App'x 306, 308 (5th Cir. 2011) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). However, where the Court determines that a *pro se* plaintiff has had the opportunity to state her best case,

the Court may dismiss the complaint with prejudice. *See, e.g., id.*; *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (citing *Bazrowx*, 136 F.3d at 1054) (affirming the district court's dismissal with prejudice where the *pro se* plaintiff's response to a questionnaire showed he had pleaded his best case); *Cobb v. Simmons*, 373 F. App'x 469, 470 (5th Cir. 2010) (affirming dismissal with prejudice where *pro se* plaintiff's questionnaire and objections to magistrate judge's recommendation showed he had pleaded his best case); *Hunter v. Wilson*, 3:16-cv-1289-L-BN, 2016 WL 9781808, at *2-4 (N.D. Tex. Sept. 16, 2016), rec. adopted, 3:16-cv-1289-L, 2017 WL 4539431 (N.D. Tex. Oct. 11, 2017).

Here, Dunn already has amended her complaint once at the Court's direction, and her two responses (ECF No. 32, 33) to GM's Motion (ECF No. 30) restate the same duress theory she pleaded in her Original and Amended Complaints. It appears that she has pleaded her best case against GM, though her claims are legally insufficient. Because any further amendment would not be likely to state a viable claim against the defendants, any further amendment would be futile. Thus, Judge Means should dismiss Dunn's claims against GM without leave to amend.

## IV. CONCLUSION

Because the facts alleged show that Dunn and GM entered into a valid agreement releasing all claims at issue in this case and that Dunn did not state a valid claim of duress, the undersigned recommends that Judge Means **GRANT** GM's Motion to Dismiss (ECF No. 30), enforcing the Agreement executed by Dunn and GM on January 30, 2025 (ECF No. 30-2), and **DISMISS** Dunn's claims without leave to amend.

A copy of these findings, conclusions, and recommendation shall be served by all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with

a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass*, 79 F.3d at 1417, modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

It is so **ORDERED** on October 20, 2026.

Hal R. Ray, Jr.
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE